UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA BEECH, | No.  2:15-cv-00268-TLN-CDK |
| Plaintiff, | |
| v. | **ORDER** |
| CITY OF STOCKTON, SAN JOAQUIN COUNTY; and Does 1 through 50, | |
| Defendants. | |

This matter is before the Court on Defendant San Joaquin County's ("County") Motion for Summary Judgment (ECF No. 58) and Defendant Stockton Police Officers Kirsten McClure ("Officer McClure"), Joshua DeJong ("Officer DeJong"), and Christopher Pulliam's ("Officer Pulliam") (collectively, "Defendants") Motion for Summary Judgment (ECF No. 59).  Plaintiff Melinda Beech ("Plaintiff") opposes both motions.  (ECF Nos. 61, 66.)  County and the individual Defendants both replied.  (ECF Nos. 64, 67.)  For the reasons set forth below, County's Motion for Summary Judgment (ECF No. 58) is GRANTED and Defendants' Motion for Summary Judgment (ECF No. 59) is DENIED.

/ / /

/ / /

/ / /

1

1    **I.     FACTUAL BACKGROUND**[1]

2        On July 27, 2013, Plaintiff attended a party at a residence in Stockton, California, where

3    she consumed at least two beers and one shot of hard alcohol and was involved in a physical

4    altercation with the homeowners.  (Defendant County's Statement of Undisputed Material Facts,

5    ECF 58-2 ¶ 1 ("County UMF")[2]; Defendants Statement of Undisputed Material Facts, ECF No.

6    59-2 at 5–6 ("Defendants' UMF".)  During the altercation, which lasted more than five minutes,

7    one of the homeowners pushed Plaintiff into the wall and punched her in the nose, and the other

8    homeowner punched her in the forehead.  (Defendants' UMF at 6–7.)  Plaintiff was pushed into

9    the wall and her left shoulder made contact with the wall.  (Defendants' UMF at 6.)  Plaintiff was

10   escorted out of the house by an individual who was holding her by the shoulder, and while being

11   escorted, her body was touching the walls.  (Defendants' UMF at 8.)  Plaintiff was bleeding from

12   injuries incurred in the altercation prior to any contact with police.  (Defendants' UMF at 9.)

13       Officers DeJong and Pulliam were dispatched to the residence following a reported

14   disturbance of a "female in a sundress being forced into a vehicle."  (County UMF ¶ 2;

15   Defendants' UMF at 4.)  After Plaintiff exited the residence, Officers DeJong and Pulliam

16   detained her at the rear of the patrol car.  (County UMF ¶ 3; Defendants' UMF at 8.)  Officers

17   DeJong and Pulliam observed Plaintiff to be intoxicated and aggressive.  (County UMF ¶ 4;

18   Defendants' UMF at 10.)  Plaintiff states she was not belligerent or irate and spoke to Officers

19   DeJong and Pulliam in a calm manner.  (Plaintiff's response to Defendants' Statement of

20   Undisputed Facts, ECF No. 66-1 at 7.)  Plaintiff informed Officers DeJong and Pulliam about the

21   altercation with the homeowners.  (Defendants' UMF at 10.)

22       Officer McClure subsequently arrived at the scene in a marked patrol car and approached

23

24   [1]    The background section provides a general overview of the action based on the evidence
submitted by the parties, from which the Court largely finds there are no genuine disputed issues
25   of material fact.  The Court will note where a dispute exists.

26   [2]    Plaintiff submits a "Statement of Undisputed Facts" in response to Defendant County's
27   statement in which she admits each fact set forth by the County.  (*See* ECF No. 62.)  Accordingly,
the Court finds no genuine dispute of material fact regarding any of the County's submitted
28   undisputed facts.

1    Plaintiff. (*Id.* at 10–11.) Officers DeJong and Pulliam informed Officer McClure that Plaintiff

2    was "acting irate" and they were currently ascertaining "what was going on." (*Id.* at 11.) Officer

3    McClure asked Plaintiff "what's going on here tonight?" (*Id.*) Plaintiff did not like the tone

4    Officer McClure used when speaking to her. (*Id.*) Officer McClure told Plaintiff charges were

5    being filed against her and ordered Plaintiff to put her hands behind her back as she reached for

6    Plaintiff's right wrist to place her in handcuffs. (*Id.* at 16.) Plaintiff placed her hands in the air

7    away from Officer McClure and began yelling and using profanity. (*Id.*) At this point, Officer

8    McClure used her body weight to bring Plaintiff to the ground. (*Id.*) Plaintiff contends Officer

9    McClure used excessive force by slamming Plaintiff to the ground and placing her knee on her

10   back. (County UMF ¶ 5; Defendants' UMF at 2, 12.) Officer McClure placed her knee on

11   Plaintiff's back while she was on the ground, and Plaintiff yelled "you are hurting me" and "get

12   off of me." (Defendants' UMF at 17.) Defendants contend Plaintiff was yelling, kicking her feet,

13   and cursing at officers after she was taken to the ground.[3] (Defendants' UMF at 12.)

14          Defendants used a safety WRAP device to restrain Plaintiff while she was on the ground.

15   (*Id.* at 13.) Plaintiff further contends Defendants used excessive force when throwing her in the

16   back of the police car while she was handcuffed. (Defendants' UMF at 3; Defendants' UMF at

17   17.) Plaintiff alleges she suffered a broken collarbone as a result of Defendants' conduct during

18   this incident. (Defendants' UMF at 18.) Officer McClure did not use a leg sweep while bringing

19   Plaintiff to the ground. (*Id.* at 12–13.)

20          Defendants placed Plaintiff under arrest and transported her to San Joaquin General

21

22   [3]      Plaintiff disputes this fact by pointing to deposition testimony that purportedly shows
     Plaintiff was not cursing or kicking at Defendants. (ECF 66-1 at 8 (citing Beech Dep., ECF No.
23   60 at 52).) The testimony Plaintiff identifies is taken out of context. Plaintiff references the
     portion of her deposition pertaining to her actions preceding the takedown. Immediately
24   following the referenced excerpt, however, Plaintiff unequivocally states in her deposition that,
     "[a]fter [the takedown] and I was on the ground, I was kicking my feet and I was screaming . . . ."
25   (ECF No. 60 at 52–53.) Plaintiff's testimony is consistent with Officer DeJong's testimony that
     Plaintiff continued to kick, shout, and cuss at the officers while on the ground (ECF No. 60 at
26   102) and Officer Pulliam's testimony that Plaintiff's legs were violently flailing while on the
     ground (ECF No. 60 at 125, 130). Accordingly, Plaintiff fails to establish a disputed material
27   issue of fact and the Court deems this fact undisputed for purposes of resolving Defendants'
     Motion. Fed. R. Civ. P. 56(e)(2).
28

1    Hospital for evaluation of injuries by the hospital medical staff.  (County UMF ¶¶ 6, 7;

2    Defendants' UMF at 13.)  Plaintiff did not complain of her shoulder injury to Defendants.[4]

3    (Defendants' UMF at 18.)  Plaintiff suffered several apparent injuries as a result of her

4    altercations including two large scrapes as a result of the weather stripping on the patrol car that

5    she contacted when the officers placed her into the car.  (Defendants' UMF at 14.)  Plaintiff

6    asserts the weather stripping also injured her right arm.  (ECF No. 66 at 3.)  While at the hospital

7    for evaluation, Plaintiff did not complain of any injury or pain to her shoulder.  (County UMF ¶

8    8.)  Following her evaluation, Plaintiff was medically cleared to be transported to the San Joaquin

9    County Jail by the Stockton Police officers.  (County UMF ¶ 9.)

10           That night, Plaintiff was booked at the San Joaquin County Jail, and a Booking Medical

11   Screen Questionnaire was created at 11:58 p.m.  (County UMF ¶ 10.)  At some point while

12   detained at the jail, Plaintiff requested medical attention for her shoulder.  (County UMF ¶ 12.)

13   Plaintiff alleges she informed a deputy on duty of her injury.  (ECF No. 61-1 at 2.)  Plaintiff was

14   released from the jail the following morning at around 7:00 a.m.  (County UMF ¶ 11.)

15           **II.      PROCEDURAL BACKGROUND**

16           Plaintiff initiated this action on January 30, 2015, alleging three causes of action: (1)

17   excessive force against Officers McClure, DeJong, and Pulliam; (2) denial of medical care against

18   the DOE Sheriff's Deputy; and (3) denial of medical care constituting deliberate indifference to

19   her medical needs against the County.  (ECF No 1; ECF No. 20 at 5–6; Defendants' UMF at 2.)

20   Plaintiff's excessive force claim arises out of her arrest.  (Defendants' UMF at 2.)

21           On April 4, 2019, the County filed a Motion for Summary Judgment on the basis that

22   Plaintiff fails to establish *Monell* liability or a deliberate indifference claim against the County or

23   DOE Defendant.  (ECF No. 58.)  On April 18, 2019, Defendants moved for summary judgment

24

---

25   [4]      Plaintiff appears to dispute this fact.  Defendants state "Plaintiff never told anyone from
     the time she left the scene until after she was booked in the San Joaquin County Jail that she had a
26   shoulder injury."  (Defendants' UMF at 18.)  Plaintiff states she "informed the San Joaquin
     Deputy of her injury."  (ECF No. 66-1 at 12.)  However, the Deputy at issue is the DOE
27   Defendant that Plaintiff interacted with after she was booked at the jail.  (*See* ECF No. 60 at 84.)
     Accordingly, Plaintiff fails to establish a disputed material issue of fact, and the Court deems this
28   fact undisputed for purposes of resolving Defendants' Motion.  Fed. R. Civ. P. 56(e)(2).

1    on the basis that their actions were reasonable, or in the alternative, they are entitled to qualified

2    immunity.  (ECF No. 59.)  Plaintiff opposes both motions.  (*See* ECF Nos. 61, 66.)

3        **III.    STANDARD OF LAW**

4        The purpose of summary judgment is to "pierce the pleadings and assess the proof in

5    order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith*

6    *Radio Corp.* (*Matsushita*), 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when the

7    moving party demonstrates no genuine issue as to any material fact exists and the moving party is

8    entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398

9    U.S. 144, 157 (1970).  "In cases that involve … multiple causes of action, summary judgment

10   may be proper as to some causes of action but not as to others, or as to some issues but not as to

11   others, or as to some parties, but not as to others." *Conte v. Jakks Pac., Inc.*, 981 F. Supp. 2d 895,

12   902 (E.D. Cal. 2013) (quoting *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981)); *see also*

13   *Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Comm'r Internal Revenue*

14   *Serv.*, 878 F.2d 306, 309 (9th Cir. 1989).  A court "may grant summary adjudication as to specific

15   issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F. Supp. 1051,

16   1055 (S.D. Cal. 1977).

17       Under summary judgment practice, the moving party always bears the initial

18   responsibility of informing the district court of the basis of its motion, and identifying those

19   portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together

20   with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material

21   fact. *Celotex Corp. v. Catrett* (*Celotex*), 477 U.S. 317, 323 (1986).  To carry its burden of

22   production on summary judgment, a moving party "must either produce evidence negating an

23   essential element of the nonmoving party's claim or defense or show that the nonmoving party

24   does not have enough evidence of an essential element to carry its ultimate burden of persuasion

25   at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.* (*Nissan Fire*), 210 F.3d 1099,

26   1102 (9th Cir. 2000).  "If a moving party fails to carry its initial burden of production, the

27   nonmoving party has no obligation to produce anything, even if the nonmoving party would have

28   the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–03; *see Adickes*, 398

1    U.S. at 160.  If, however, a moving party carries its burden of production, the burden then shifts

2    to the nonmoving party to establish that a genuine issue as to any material fact actually does exist.

3    *Matsushita*, 475 U.S. at 585–87.

4         In the endeavor to establish the existence of a factual dispute, the nonmoving party need

5    not establish a material issue of fact conclusively in its favor but need only show the claimed

6    factual dispute "require[s] a jury or judge to resolve the parties' differing versions of the truth at

7    trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  Nevertheless,

8    "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will

9    be insufficient." *Anderson*, 477 U.S. at 252.  Similarly, the nonmoving party may not merely rely

10   upon the mere allegations or denials of its pleadings or "show that there is some metaphysical

11   doubt as to the material facts," but must instead tender evidence of specific facts in the form of

12   affidavits and/or admissible discovery material, in support of its contention that the dispute exists.

13   *Matsushita*, 475 U.S. at 586; *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th

14   Cir. 2008) (quoting Fed. R. Civ. P. 56(c), (e)).  Finally, the nonmoving party must demonstrate

15   that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under

16   the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the

17   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

18   nonmoving party.  *Id.* at 251–52.

19        In resolving the summary judgment motion, the court examines the pleadings, depositions,

20   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

21   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

22   of the nonmoving party is to be believed, and all reasonable inferences that may be drawn from

23   the facts pleaded before the court must be drawn in favor of the nonmoving party.  *Anderson*, 477

24   U.S. at 255.  Nevertheless, mere disagreement as to legal implications of the material facts does

25   not bar summary judgment.  *See Beard v. Banks*, 548 U.S. 521, 530 (2006).  Rather, the inquiry is

26   "whether the evidence presents a sufficient disagreement to require submission to a jury or

27   whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

28   251–52.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of

6

1    material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d

2    at 1103; *see also Celotex*, 477 U.S. at 322.

3         **IV.    ANALYSIS**

4              A.  County's Motion

5         Plaintiff alleges two causes of action pertaining to the County: (1) that while detained at

6    the San Joaquin County Jail facility on July 27, 2013, Defendant DOE Sheriff's Deputy

7    intentionally denied Plaintiff medical care after she complained of severe pain around her clavicle

8    and this denial of care amounts to deliberate indifference in violation of federal law; and (2) the

9    County has inadequate training and policies regarding medical care for pre-trial detainees which

10   amounts to deliberate indifference to constitutional rights.  (ECF No. 20 at ¶¶ 14–16, 23–26.)

11        The County, construing Plaintiff's allegations as asserting a *Monell* claim, argues Plaintiff

12   fails to set forth any evidence supporting her allegation that Defendants had a custom, policy, or

13   practice to deny medical treatment.[5]  (ECF No. 58-1 at 5–6.)  The Court agrees.

14              *i.  Section 1983* Monell *Liability*

15        A government entity may be held liable under 42 U.S.C. § 1983, but such liability must be

16   founded upon evidence that the government unit itself supported a violation of constitutional

17   rights and not on the basis of the respondeat superior doctrine or vicarious liability.  *Monell v.*

18   *New York City Dept. of Social Servs.*, 436 U.S. 658, 689–91 (1977).  To bring a *Monell* claim,

19   Plaintiff must establish "the local government had a deliberate policy, custom, or practice that

20   was the 'moving force' behind the constitutional violation [she] suffered."  *Whitaker v. Garcetti*,

21   486 F.3d 572, 581 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694); *see also Bd. of Cnty. Comm'rs*

22

23   _____
     [5]     In its Motion for Summary Judgment, the County additionally argues on behalf of the
     DOE Deputy that the County is not liable for deliberate indifference or, alternatively, is
24   qualifiedly immune.  (ECF No. 58-1 at 4–5.)  At this time, however, the Court declines to
     consider these arguments as they are premature where the DOE deputy defendant (1) has not yet
25   been identified and substituted into this action, (2) has not appeared, and (3) is seemingly not
     represented by County counsel.  *See Lee v. Plummer*, No. C-04-2636-VRW, 2005 WL 91380, at
26   *6 (N.D. Cal. Jan. 17, 2005) ("Because none of the Doe defendants have been identified or
     served, it would be premature for the court to consider whether plaintiff's complaint states a
27   claim against them upon which relief can be granted.").  Further, considering the Court's ruling
28   on the County's motion as discussed herein, the Court need not reach these arguments.

1    *of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).  The Ninth Circuit has held that a single

2    incident will typically not suffice to demonstrate existence of a policy.  *See Christie v. Iopa*, 176

3    F.3d 1231, 1235 (9th Cir. 1999).  Rather, in order to succeed, Plaintiff must show a longstanding

4    practice or custom which constitutes the standard operating procedure of the local government

5    entity.  *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom

6    may not be predicated on isolated or sporadic incidents; it must be founded upon practices of

7    sufficient duration, frequency and consistency that the conduct has become a traditional method

8    of carrying out policy.").  For a failure to train claim, "[o]nly where a municipality's failure to

9    train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its

10   inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is

11   actionable under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

12          Here, the County argues Plaintiff has not and cannot meet the high burden to establish any

13   official policy regarding the denial of medical care for pre-trial arrestees.  (ECF No. 58-1 at 6.)  In

14   support of its argument, the County submits copies of its policies and procedures pertaining to

15   treatment of pre-trial detainees, specifically with respect to the provision of medical care, with

16   supporting affidavits.  (*See* ECF Nos. 58-4, 58-5.)  The Court finds the County has met its initial

17   burden.  *Celotex*, 477 U.S. at 323; *Nissan Fire*, 210 F.3d at 1102–03.

18          Plaintiff, on the other hand, submits no evidence in support of her allegations against the

19   County and admits every one of the County's undisputed material facts.  (*See* ECF No. 62.)

20   Indeed, in opposition, Plaintiff concedes the futility of such a claim against the County stating,

21   "[a]t this time, Plaintiff dismisses her [*Monell*] claim against this defendant."  (ECF No. 61 at 7.)

22   While Plaintiff is precluded from voluntarily dismissing her claim at this time, it is nevertheless

23   clear that Plaintiff has failed to meet her burden to establish there is a genuine dispute of material

24   fact as to this claim.  *Matsushita*, 475 U.S. at 585–87; *see also* Fed. R. Civ. P. 41(a) (a plaintiff

25   may only voluntarily dismiss an action or claim without a court order by either filing the notice of

26   dismissal before the opposing party serves either an answer or a motion for summary judgment,

27

28

1    or pursuant to a joint stipulation).  Summary judgment is therefore appropriate.[6]

2          The Court concludes that no reasonable jury could find for Plaintiff on her "denial of

3    medical care" claim because Plaintiff does not provide any evidence that the County had a

4    deliberate policy, custom, or practice, or failed to train its employees with respect to providing

5    appropriate medical care to pre-trial arrestees.  Nor does Plaintiff establish that such a policy or

6    failure to train would amount to deliberate indifference as required for an actionable claim under

7    § 1983.  *Whitaker*, 486 F.3d at 581; *Trevino*, 99 F.3d at 918; *City of Canton*, 489 U.S. at 380.

8    The Court therefore GRANTS the County's Motion for Summary Judgment as to Plaintiff's third

9    cause of action ("denial of medical care").  Further, as no remaining claims are asserted against

10   the County, it is hereby DISMISSED from this action.

11                        B.  Defendants' Motion

12         Defendants bring three arguments: (1) that the challenged use of force by the officers in

13   connection with the arrest was reasonable and not in violation of the Fourth Amendment; (2) that

14   regardless, Defendants' conduct is protected from liability by qualified immunity; and (3) there is

15   no evidence of a connection between Plaintiff's injury and the arrest.  (ECF No. 59-1 at 5–12.)

16                        *i.  Excessive Force Claim*

17         An excessive force claim is analyzed under the Fourth Amendment's "objective

18   reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  To assess whether a

19   use of force was objectively reasonable, one must "balanc[e] the 'nature and quality of the

20   intrusion' on [the] person's liberty with the 'countervailing governmental interests at stake.'"

21   *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (quoting *Graham*, 490 U.S. at 396).

22         Relevant factors to assessing whether the use of force was objectively reasonable include

23   "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

24   the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

25   flight."  *Graham*, 490 U.S. at 396.  "These factors, however, are not exclusive."  *Bryan v.*

26   —————————————
      [6]      To the extent Plaintiff seeks to establish a § 1983 claim for deliberate indifference against
27   the County based on the purported actions of the DOE deputy, Plaintiff's claim also fails as a
      matter of law.  *Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for
28   an injury inflicted solely by its employees or agents.").

1    *McPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

2           The question of whether the force used to effect an arrest is reasonable "is ordinarily a

3    question of fact for the jury." *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir.

4    1997); *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).  A determination on the

5    reasonableness of the use of force "nearly always requires a jury to sift through disputed factual

6    contentions, and to draw inferences therefrom." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir.

7    2002).  As a result, "summary judgment or judgment as a matter of law in excessive force cases

8    should be granted sparingly." *See id.* at 853; *Liston v. County of Riverside*, 120 F.3d 965, 976

9    n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily

10   a question of fact for the jury," citing cases); *Chew v Gates*, 27 F.3d 1432, 1440–41 (9th Cir.

11   1994) ("Because questions of reasonableness are not well-suited to precise legal determination,

12   the propriety of a particular use of force is generally an issue for the jury.").  Summary judgment

13   may be appropriate, however, when the facts concerning an incident are largely undisputed.  *See*

14   *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("[D]efendants can still win on summary

15   judgment if the district court concludes, after resolving all factual disputes in favor of the

16   plaintiff, that the officer's use of force was objectively reasonable under the circumstances.").

17          A genuine dispute of material fact exists as to whether Officer McClure's conduct was

18   objectively reasonable.  Plaintiff asserts Officer McClure threw her down on the ground.[7]  While

19   tackling is typically considered a low quantum of force, *see Jackson v. City of Bremerton*, 268

20   F.3d 646, 650–52 (9th Cir. 2001) (pushing plaintiff to the ground, placing a knee on her back to

21   handcuff her, then "roughly" lifting her to her feet and putting her in police car was considered a

22

23   [7]     Plaintiff also alleges Officer McClure placed her knee on Plaintiff's back and that all
     Defendants used excessive force to "yank" Plaintiff up by her handcuffs and feet and "violently
24   throw" her into the back of the police car. (ECF No. 66 at 4; Beech Decl., ECF No. 66-1 at ¶ 2.)
     These behaviors typically do not amount to anything more than minimal intrusions.  Placing a
25   knee in the back of a suspect to handcuff them after a takedown is considered a minimal use of
     force. *See Jackson*, 268 F.3d at 650, 652.  Moreover, lifting a subdued suspect off the ground to
26   be placed in a police vehicle generally indicates only a minimal quantum of force. *Id.* at 652.
     However, the Court declines to make a finding as to whether these actions were minimal
27   intrusions or not.  They occurred after a potential use of excessive force and the Court finds these
28   questions are better suited for a jury.

                                               10

"normal handcuffing procedure" and deemed a "minimal" amount of force); *see also Bennett v. Gow*, 345 F. App'x 286, 287 (9th Cir. 2009) (pushing plaintiff to ground after he refused to give license, tried to walk away, and twisted away when the officer tried to handcuff him was a "relatively minor" amount of force), the presence of significant injuries from a takedown may suggest the magnitude of the force used, *see Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (noting the extent of injury may provide some indication of the amount of force applied, but it is not dispositive to the inquiry of whether or not the force used was excessive); *see also Santos v. Gates*, 287 F.3d 846, 853–54 (9th Cir. 2002) (finding the nature of the intrusion "quite severe" where the plaintiff sustained a broken vertebra as a result of being taken to the ground); *Buller v. Woodrow*, 2020 WL 999614, *6 (N.D. Cal. Mar. 2, 2020) (citing *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011) (stating the amount of force was "intermediate" because it was capable of inflicting significant pain and causing serious injury).

Here, in addition to sustaining minor cuts and scrapes on her knees and lip (ECF No. 66-2 at 9; ECF No. 60 at 67–69), Plaintiff's testimony presents a factual predicate in support of her claim that the force of the takedown was sufficient to cause her collarbone to break in four places. (ECF No. 66 at 4; *see also* ECF No. 59-2 at 18.)  The parties dispute how Plaintiff's collarbone was injured.  If Officer McClure did in fact cause Plaintiff's collarbone to break when bringing her to the ground, that could support a finding that Officer McClure used a significant amount of force. *Wilson v. Tran*, No. 14-CV-00940-JSC, 2015 WL 3826844, at *3 (N.D. Cal. June 19, 2015) ("A fact-finder could reasonably conclude that a broken bone in his hand is a serious injury, which in turn could support a finding that Tran used a significant amount of force."); *see also Solomon v. City of So. Lake Tahoe*, 2014 WL 6389735, at *6 (E.D. Cal. Nov. 14, 2014) (finding summary judgment on excessive force claim improper where "genuine issues of disputed material fact exist as to the amount of force" used).  In the instant case, there is a genuine dispute of material fact regarding how much force was used, and subsequently, whether that force was therefore reasonable.  Accordingly, this is not appropriate for resolution on summary judgment, and Defendants' Motion on these grounds is DENIED.

/ / /

11

1              *ii.   Qualified Immunity*

2              Qualified immunity "protects government officials from liability for civil damages insofar

3       as their conduct does not violate clearly established statutory or constitutional rights of which a

4       reasonable person would have known." *Mueller v. Auker*, 700 F.3d 1180, 1185 (9th Cir. 2012)

5       (*quoting Messerschmidt v. Millender*, 565 U.S. 535 (2012)) (internal quotation marks omitted);

6       *see also Behrens v. Pelletier*, 516 U.S. 299, 311–12 (1996) (qualified immunity may provide

7       immunity from certain claims and not reach all claims).  The doctrine "gives government officials

8       breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly

9       incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)

10      (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Qualified immunity is an affirmative

11      defense; the burden of pleading it rests with the defendant.  *Crawford-El v. Britton*, 523 U.S. 574,

12      586–87 (1998).

13             A qualified-immunity analysis requires determining: (1) whether facts alleged, taken in

14      the light most favorable to the injured party, show the defendants' conduct violated a

15      constitutional right; and (2) whether the right was clearly established.  *Lacey v. Maricopa County*,

16      693 F.3d 896, 915 (9th Cir. 2012) (*en banc*) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

17      Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified

18      immunity analysis should be addressed first in light of the circumstances in the particular case at

19      hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

20             Defendants argue even if their conduct violated Plaintiff's Fourth Amendment rights,

21      qualified immunity protects them from liability.  (ECF No. 59-1 at 13.)  The Court has

22      determined the record contains sufficient evidence to raise a triable issue as to whether

23      Defendants' conduct constituted excessive force in violation of the Fourth Amendment.  As such,

24      "[s]ummary judgment in favor of the Defendants is improper because where there are factual

25      disputes as to the parties' conduct or motives, qualified immunity cannot be resolved at summary

26      judgment and the case must proceed to trial." *Beaver v. City of Fed. Way*, No. CV05-1938MJP,

27      2006 WL 3203729, at \*3 (W.D. Wash. Nov. 3, 2006); *Liston v. County of Riverside*, 120 F.3d

28      965, 975 (9th Cir.1997) (finding summary judgment for defendants improper where a genuine

                                                    12

1    issue of material fact prevents a determination of qualified immunity).  Accordingly, summary

2    judgment on the basis of qualified immunity is not appropriate, and Defendants' Motion on this

3    basis is DENIED.

4          **V.      CONCLUSION**

5          For the foregoing reasons, IT IS HEREBY ORDERED that:

6          1.  Defendant San Joaquin County's Motion for Summary Judgment (ECF No. 58) is

7    GRANTED as to Plaintiff's third cause of action ("denial of medical care") and the County is

8    DISMISSED from this action.

9          2.  Defendants' Motion for Summary Judgment (ECF No. 59) is DENIED.

10         3.  The parties are hereby ordered to file a Joint Status Report within thirty (30) days of

11   this Order indicating their readiness to proceed to trial and proposing trial dates.

12         IT IS SO ORDERED.

13   Dated:  September 23, 2021

14

15

16                                        _____
                                          Troy L. Nunley
17                                        United States District Judge

18

19

20

21

22

23

24

25

26

27

28

13